**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ROBERT JOHNSON,** | ) |
| Plaintiff, | ) |
| | ) |
| | ) **Case No.:** |
| **-vs.-** | ) **Hon.** |
| | ) **Mag.** |
| | ) |
| **THE WASTENAW COUNTY** | ) |
| **SHEIFF'S DEPARTMENT,** | ) |
| **OFFICER JACOB GUMBOS** | ) |
| **SRGT. MICHAEL HOGAN,** | ) |
| **And OFFICER W.D.LYONS,** | ) |
| Defendant, | ) |

_________________________________________/

**PREMIER LEGAL GROUP, PLLC**
**JERARD M. SCANLAND (P74992)**
Attorney for Plaintiff
13351 Reeck Court, Suite 5
Southgate, Michigan 48195
Telephone: (734) 282-6037
Facsimile: (734) 447-5853
jscanland@milawoffices.com
_________________________________________/

**COMPLAINT FOR POLICE MISCONDUCT AND JURY DEMAND**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

/s/Jerard M. Scanland____
**JERARD M. SCANLAND**
**Attorney At Law**

**COMES NOW THE,** Plaintiff, **ROBERT JOHNSON,** through his attorney the law firm of PREMIER LEGAL GROUP, PLLC and by the undersigned counsel Jerard M. Scanland, and in support of his Complaint For Police Misconduct states the following:

**<u>JURISDICTION</u>**

1. The Plaintiff brings this cause of action pursuant to USC 42 Sec 1983, and a violation of the 4th Amendment.

2. This is a civil action for monetary damages being brought pursuant to 42 U.S.C. §1983, which guarantees citizens of the United States an action at law against any person who, acting under color of law, deprives them of their rights secured by the United States Constitution.

3. This court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. Section 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States;

   b. 28 U.S.C. Section 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

   c. 28 U.S.C Section 1367, which gives the district court supplemental jurisdiction over state law claims.

4. Plaintiff seeks all compensatory damages allowable for a violation of 42 U.S.C. §1983 and punitive damages for the reckless and callous indifference exhibited by the individual defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

5. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

## VENUE

6. Venue is appropriate in this judicial district under 28 U.S.C Section 1391 (b) because the events that gave rise to this Complaint occurred in this district.

## PARTIES

7. Plaintiff incorporates and restates the preceding paragraphs as if more fully stated herein.

8. Plaintiff is a citizen of the United States and resides in the City of Trenton, County of Wayne, State of Michigan, which is in this judicial district.

9. Defendant, the Washtenaw County Police Department is a public entity and is located in the County of Washtenaw, State of Michigan, which is in this judicial district.

10. Defendant, Jacob Gumbos, is a citizen of the United States and resides in the County of Washtenaw, State of Michigan, which is in this judicial district.

Defendant Gumbos was at all material times a police officer, who was acting under color of law and within the scope of his employment by the Washtenaw County Police Department, which is in Washtenaw County, Michigan.

11. Defendant Gumbos is being sued in his individual capacity.

12. Defendant, Michael Hogan, is a citizen of the United States and resides in the County of Washtenaw, State of Michigan, which is in this judicial district. Defendant Hogan was at all material times a police officer, who was acting under color of law and within the scope of his employment by the Washtenaw County Police Department, which is in Washtenaw County, Michigan.

13. Defendant Hogan is being sued in his individual capacity.

14. Defendant, W.D. Lyons, is a citizen of the United States and resides in the County of Washtenaw, State of Michigan, which is in this judicial district. Defendant Lyons was at all material times a police officer, who was acting under color of law and within the scope of his employment by the Washtenaw County Police Department, which is in Washtenaw County, Michigan.

15. Defendant Lyons is being sued in his individual capacity.

## GENERAL ALLEGATIONS

16. Plaintiff incorporates and restates the preceding paragraphs as if more fully stated herein.

17. On or about August 30, 2024, the Washtenaw County Sheriff's

Department received a call for a disorderly person and possible domestic assault.

18.Upon arrival, Officer Gumbols did not observe anyone outside the location, but did observe a female further down the road.

13. The officers did not have any reason to believe that Robert Johnson, whose identity was yet unknown to them, had committed a crime or posed any danger to them or others.

14. Upon information and belief, Defendant Lyons heard a heated discussion between Robert Johnson and his wife coming from a different apartment.

15. Defendant Gumbos then made contact with another female who advised Defendant Gumbos that another male had assaulted a female inside the residence.

16. Defendant Gumbos then went down to the other residence and made contact with a "black male" wearing a white t-shirt.

17. Upon information and belief, Plaintiff, Rober Johnson, came to the door to inquire as to why Defendant Gumbos was there. The outer screen door of the residence was closed. Plaintiff, Robert Johnson, was behind the door.

18. The officer heard nonsensical yelling coming from inside the apartment as they approached its door and had no reason to believe Robert Johnson had been involved in a crime.

Defendant Gumbos was able to see Plaintiff, Robert Johnson's, hands.

19. An unidentified male approached Plaintiff, Robert Johnson, in a fighting

stance, and began yelling at Plaintiff, Robert Johnson.

20. Defendants Gumbos and Hogan deployed tasers tasing, Plaintiff, Robert Johnson.

21. At this time, the Plaintiff posed no threat to the officers.

22. All officers knew that he was unarmed and had no reason to believe that he was armed with any weapon

22. Consequently, the officers ignored their constitutionally required responsibilities of continued deescalation, preservation of life, and the avoidance of force.

23.The Defendants, Hogan, Gumbo, and Lyons, knew that there had not been any prior calls from or police responses to the apartment.

25. The Defendants had no reasonable basis to believe that the subject, later determined to be the Plaintiff, had committed any crime.

26. The Plaintiff was not under the influence of drugs or alcohol.

27. Under Michigan law, both a stun gun and a taser are considered "a device that uses electro-muscular disruption technology" and “is capable of creating an electro-muscular disruption and is used or intended to be used as a defensive device capable of temporarily incapacitating or immobilizing a person by the direction or emission of conducted energy.” MCL 750.224a.

28. All officers knew that he was unarmed and had no reason to believe that

he was armed with any weapon.

## LEGAL FRAMEWORK

### 1. Right of Action

29. The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure in their persons from unreasonable seizures, which includes the right to be free from unreasonable or excessive force during an arrest.

30. The Fourteenth Amendment to the United States Constitution guarantees pretrial detainees the right to adequate medical care.

31. Citizens have a right to bring an action against governments and governmental employees for the violation of their rights.

> "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983."

### 2. Use of Force in General

32. The Fourth Amendment protects citizens from excessive force by law enforcement officers.

33. It is clearly established that, when a police officer applies force against a citizen, the level of force used must be objectively reasonable in light of the facts and circumstances that were known to the officer.

34. Therefore, seizing officers owe citizens the constitutional duty to limit the use of force during detention to what is reasonable and proportional according to the totality of the circumstances; and, to reduce the degree of force used as the need diminishes.

35. Seizing officers must use the least amount of force necessary to accomplish lawful law enforcement objectives.

36. Officers are liable when their unconstitutional use of excessive force violates a right that was clearly established.

37. Rights are clearly established by decisions of the United States Supreme Court, the decisions of courts in this circuit, the decisions of courts in other circuits, laws, and accepted police policies and procedures.

**4. Taser Usage**

38. "TASER" is a trade name for an electronic control weapon (ECW) that is manufactured and supplied by TASER international.

39. Such devices are also referred to as electro muscular disruption devices, conducted energy devises, conducted electrical weapons, and other similar names.

40. Such weapons are designed to subdue a person by electrifying them.

41. They are deployed in one of two ways: (1) dart-probe mode and (2) drive-stun mode.

42. Dart-probe mode involves shooting two darts into a person that are

connected to the gun by wires that cause an electrical circuit to pass through the subject's body resulting in neuromuscular incapacitation, which means that the person loses control of their muscles and the muscles involuntarily contract or tense up.

43. Drive-stun mode involves forcefully driving metal probes located on the gun itself into the subject's body, pulling the trigger and causing a painful electrical shock.

44. The State of Michigan requires police officers to be trained in the use of an ECW to carry such a weapon. MCL §750.224a.

45. ECW's have been held to be dangerous per se because they are designed to cause excruciating pain.

46. It is clearly established that the use of an ECW is a proportional use of force only when deployed upon a subject who is so violent so as to endanger responders, such that a reasonable officer would perceive some immediate danger that could be mitigated by using the taser.

47. The gratuitous or excessive use of a taser violates the clearly established right to be free from the use of excessive force.

48. It is clearly established that an officer may not use a taser against a person who has been subdued, incapacitated, or neutralized.

49. It is clearly established that an officer may not continue to use force with

blows or intermediate weapons after a person is handcuffed and hogtied.

50. Established and accepted police procedures and policies related to ECW application include, but are not limited to the following:

a. ECW applications longer than 15 seconds, continuously or cumulatively, may cause serious injury or death, and are excessive,

b. Persons who are suffering a mental health crisis or are under the influence of drugs or alcohol are at a greater risk of serious injury or death from ECW application than those who are not,

c. Application of more than one ECW simultaneously with another is excessive force,

d. Application of an ECW more than three times or longer than 15 seconds is excessive,

e. An ECW should not be used in drive-stun mode to achieve pain compliance, particularly in those who are suffering a mental health crisis or are under the influence of drugs or alcohol due to a mind-body disconnect,

f. Police officers must use a restraint technique on persons subjected to the application of an ECW that does not impair respiration,

g. Officers who use ECWs must be trained in the use of the weapon by a properly accredited instructor in addition to receiving training by the manufacturer of the weapon,

h. ECWs are not tools of convenience; but rather, are weapons of need,

i. The use of an ECW is excessive if more effective and less risky alternative methods of force are available,

j. A warning should be given to deescalate and achieve verbal compliance before an ECW application,

k. Use of an ECW in drive-stun mode causes body movement that is routinely mistaken as non-compliance,

l. Use of an ECW in drive-stun mode serves no purpose other than causing pain and should only be used to complete an electrical circuit if a probe is ineffective or becomes dislodged or to create a distance between the officer and the subject,

m. Use of an ECW in drive stun mode is likely to escalate the situation by causing rage in the subject,

n. Sufficient time must elapse between ECW applications to determine if the person will comply,

o. Use of an ECW on a person is excessive if there is no threat of imminent harm to the officer or others,

p. An ECW should not be used for flight or resistance alone,

q. Use of an ECW on a person who is subdued or incapacitated is excessive, and

r. ECWs should not be used on a person who is handcuffed.

51. Taser International, Inc., the manufacturer of the electronic control weapons material to this action, has recognized and warned its police consumers to minimize total ECW exposure in accordance with accepted police policies and practices to avoid injury and death.

52. Taser International has also warned its consumers that their ECW's should not be used to achieve pain compliance.

53. Defendant WASHTENAW COUNTY SHERIFF'S DEPARTMENT also had a policy regarding the use of ECW's or conducted energy devices that required its officers to be certified in the use of the weapon they carried.

53. Defendant WASHTENAW COUNTY SHERIFF'S DEPARTMENT policy purports to constitutionally limit taser use to the control of a violent or potentially violent person but unconstitutionally permits taser usage for physical resistance alone.

54. Upon information and belief, Defendant, WASHTENAW COUNTY SHERIFF'S DEPARTMENTpolicy does recognize many of the concepts that are required of police officers to constitutionally use a TASER; and, in that regard directs its officers to do the following when using a TASER:

a. Avoid using an ECW on a person who is handcuffed or otherwise restrained,

b. Use the drive-stun mode only to complete a circuit or to create a distance between the officer and a subject,

c. Refrain from using more than one taser on a person at the same time,

d. Complete only one standard cycle and give the subject time to respond before using the taser again,

e. Consider whether the person to be tased has the ability to understand and comply,

f. Consider tactics other than taser usage,

g. To use other techniques to control and restrain an individual, and

h. Give a verbal warning before each taser use to allow an individual time to comply with instructions.

**5. Duty to Intervene**

55. An officer owes a constitutional duty to intervene to prevent a

constitutional violation where the officer has reason to know that a constitutional violation is occurring or is about to occur and the officer has the opportunity and the means to prevent the harm from occurring.

56. In addition, an officer who supervises the use of excessive force by another officer is liable for the use of excessive force by that other officer.

57. A supervisory officer is individually liable for his or her own unconstitutional actions and is liable in his or her supervisory capacity for authorizing, approving or knowingly acquiescing to the conduct of a subordinate officer that causes a constitutional injury.

**COUNT I – FAILURE TO DEESCALATE**
**BY DEFENDANTS HOGAN, GUMBO, AND LYONS**

58. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

59. Plaintiff, had a clearly established constitutional right on August 31, 2025, to be free from detention and from the application of excessive force as guaranteed by the Fourth Amendment to the United States Constitution when his apartment was approached by Defendants.

60. The general rule is that a police officer’s use of force must be objectively reasonable in light of the facts and circumstances that were known to the officer

before the force was applied and that the degree of force must be reduced as the need diminishes.

61. However, it is clearly established that a police officer who encounters a person with mental illness, must determine whether and how to deescalate the situation before resorting to force.

62. Rather than deescalating and monitoring, Defendants escalated by using unreasonable and excessive force in violation of Plaintiff's clearly established rights.

63. Defendants escalated the situation and used excessive force against the Plaintiff by doing the following:

a. Failing to take charge of the situation as the initial responder,

b. Allowing other officers to attempt to engage in dialogue with the Plaintiff after attempting to initiate dialogue himself,

c. Failing to explain that he was there to help,

d. Failing to back-off and passively monitor and instead escalating by aiming his taser at the Plaintiff,

e. Failing to request the presence of a person trained in crisis management,

f. Failing to seek specialized resources, including but not limited to medical professionals and mental health professionals,

g. Failing to employ conflict resolution and deescalation techniques,

h. Failing to recognize that the Plaintiff might not understand commands,

i. Taking an aggressive stance and using aggressive tactics,

j. Making or allowing threats to be made to achieve compliance,

k. Failing to advise other responders that the subject was mentally ill and to approach without lights and sirens,

l. Engaging in acts of force and excessive force, m. Any other actions that become known throughout discovery.

64. Defendants escalated the situation and used excessive force against the Plaintiff by doing the following:

a. To the extent that he was trained in crisis intervention, failing to take charge of the situation or designating an officer trained in crisis management to take charge,

b. Attempting to engage in dialogue with the Plaintiff after Defendant Gumbos began the dialogue,

c. Allowing other defendants to participate in dialogue with the Plaintiff,

d. Failing to explain that he was there to help,
e. Failing to back-off and passively monitor and instead escalating by drawing his handgun and shining a bright light at the Plaintiff, in a show of authority,

f. Failing to request the presence of a person trained in crisis management,

g. Failing to seek specialized resources, including but not limited to medical professionals and mental health professionals,

h. Failing to employ conflict resolution and deescalation techniques,

i. Failing to recognize that the Plaintiff might not understand commands,

j. Taking an aggressive stance and using aggressive tactics,

k. Making or allowing threats to be made to achieve compliance,

l. Engaging in acts of force and excessive force,

m. Failing to advise other responders that the subject was mentally ill and to approach without lights and sirens, and

65. Defendants escalated the situation and used excessive force against the Plaintiff by tasing the Plaintiff.

66. The failure of Defendants to deescalate was objectively unreasonable.

67. Rather than employing deescalation techniques toward an individual who all officers knew was unarmed, including retreating and passively monitoring him, Defendants tased the Plaintiff .

68. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully requests entry of a judgment in favor of the estate and against Defendants in some amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

## COUNT II – EXCESSIVE FORCE AGAINST DEFENDANTS GUMBO, HOGAN, AND LYONS, FOLLOWING THE FAILURE TO DEESCALATE AND DURING THE CONTINUED FORCE APPLICATION

69. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set

forth herein.

64. Defendants owed a continuing constitutional duty to deescalate when they elected to tase Plaintiff, who a reasonable officer would have known was unarmed.

65. Defendants owed a constitutional duty to Plaintiff to limit the level of force that they would apply to what was reasonable and proportional based upon what a reasonable officer would have known before force was applied, limiting their force to the least amount necessary to achieve lawful objectives and decreasing the level of force as the need diminished.

66. Defendants used excessive force by:

a. Failing to deescalate and monitor the situation before engaging in force,

b. Failing to warn Plaintiff before deploying their taser,

c. Tasing Plaintiff for being in a fighting stance,

d.Tasing Plaintiff simultaneously with other officers when he knew that other officers were deploying their tasers,

67. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully requests entry of a judgment in favor of the estate and against Defendants in some

amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

**COUNT-III**
**VIOLATION OF PLAINTIFF'S FORTH AMENDMENT RIGHTS**

68. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

69. Defendants deprived Plaintiff of his federal and/or statutory rights in conducting an unreasonable search and seizure in violation of the 4th Amendment to the U.S. Constitution.

70. There is no doubt that when one individual is detained

and placed in police custody it is considered a seizure and here, where there was an unlawful seizure of the Plaintiff when Plaintiff had not violated any law.

71. Defendants' tased Plaintiff for simply being in a fighting stance, without his consent, and without just cause or provocation. In this instance, Plaintiff

72. Defendants actions in knowingly, maliciously, and willingly violating Plaintiff's civil rights resulted in an unlawful search, an unlawful seizure, and an unlawful arrest and imprisonment.

73. The Defendants, acted under the color of state law when they/it, deprived

Plaintiff of his federal rights, property interests and otherwise executed an unreasonable seizure of Plaintiff.

74. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully requests entry of a judgment in favor of the estate and against Defendants in some amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

## COUNT-IV
## VIOLATION Of 42 U.S.C. §1983

75. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

76. The use of the taser was not expressly or impliedly mandated or authorized by law. The arrest was an ultra vires activity.

77. The use of the taser was not based on any sufficient, reliable evidence.

78. As stated and incorporated herein via the General Allegations, Defendant 'deprived Plaintiff of his federal constitutional and/or statutory rights

by conducting an unreasonable seizure in violation of the 4th Amendment to the United States Constitution.

79. Defendants with clear malicious intent tased the Plaintiff without first conducting an investigation simply because he was in a fighting stance.

80. The aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

81. Defendants, acted under color of state law when the Defendants deprived Plaintiff of his federal rights, property interests and otherwise arrested the Plaintiff without provocation or probable cause.

82. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully requests entry of a judgment in favor of the estate and against Defendants in some amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

**COUNT-III**
**FALSE IMPRISONMENT**

83. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

84. As stated in the General Allegations, Defendants falsely imprisoned Plaintiff by tasing him and subsequently taking him into custody.

85. Defendants actions were unreasonable.

86. Plaintiff was conscious of the confinement, and confining him was illegal and improper, to which the Defendants intentionally and knowingly, arrestedPlaintiff and confined him to the police station and police custody.

87. At all times relevant, Plaintiff was not free to leave and Defendants refused to allow Plaintiff to leave via their illegal and wrongful actions.

88. Defendants actions in confining Plaintiff were designed to embarrass, humiliate, threaten, intimidate, and harass Plaintiff by using false statements they had authority under Michigan law to hold and arrest Plaintiff.

89. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully

requests entry of a judgment in favor of the estate and against Defendants in some amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

**COUNT-IV**
**FALSE ARREST**

90. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

91. As stated in the General Allegations, Defendants falsely arrested Plaintiff, took him into custody, and imprisoned him.

92. Defendants actions were designed to knowingly and intentionally arrest Plaintiff in order to intimidate and harass Plaintiff in violation of his civil rights.

93. Defendants did, by force, physically restrain Plaintiff by tasing the Plaintiff, putting their hands on Plaintiff, forcing his arms behind his back, and placing handcuffs on Plaintiff.

93. Defendants' actions were intentional with the intention to place Plaintiff under their custody and control in order to take Plaintiff into police custody, despite objections by Plaintiff, and in order to fully execute on the fraudulent/misrepresented warrant provided.

94. Plaintiff was conscious of the confinement, asked the Defendants whether it was unlawful to exercise First Amendment rights, advised Defendants they had no right to arrest him, and advised Defendants that the basis upon which they were arresting him was both illegal and improper, to which the Defendants intentionally and knowingly, arrested Plaintiff and confined him to the police station and police custody.

95. At all times relevant, Plaintiff was not free to leave and Defendants refused to allow Plaintiff to leave via their illegal and wrongful actions.

96. Defendants actions in arresting Plaintiff were designed to embarrass, humiliate, threaten, intimidate, and harass Plaintiff by using a false/misrepresented warrant and statements they had authority under Michigan law to hold and arrest Plaintiff.

97. Plaintiff is entitled to punitive damages for the reckless and callous indifference exhibited by the Defendants to the Plaintiff's constitutional rights in addition to costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, **ROBERT JOHNSON,** as Personal respectfully requests entry of a judgment in favor of the estate and against Defendants in some amount in excess of Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, and attorney fees that are likewise demanded.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request this Honorable court enter Judgment against Defendants providing the following relief:

a. Actual Damages against all defendants in whatever amount above $75,000 that Plaintiff is entitled;

b. Compensatory damages against all defendants to which Plaintiff is entitled;

c. Punitive/Exemplary damages against all defendants to which Plaintiff is Entitled;

d. An award of interest, costs, and reasonable Attorney fees;

e. Such other relief as this Honorable Court deems proper and just.

Dated: August 31, 2026

Respectfully Submitted,

**PREMIER LEGAL GROUP, PLLC**

**/s/** Jerard M. Scanland

**JERARD M. SCANLAND (P74992)**
Attorneys for Plaintiff
13351 Reek Court, Suite 5
Southgate, Michigan 48195
Telephone: (734)-282-6037
Facsimile: (734)-447-5853
JScanland@milawoffices.com